**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Wolfe, | No. CV-26-02836-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| GoodVets Veterinary Services LLC, | |
| Defendant. | |

This case arises from unwanted text messages to Plaintiff Lisa Wolfe's cell phone from her pet's veterinarian. Pending before the Court is Defendant GoodVets Veterinary Services, LLC's Motion to Dismiss. (Doc. 7.)

**I.**

Defendant treated Plaintiff's dog, Tater Tot, on March 29, 2025. (Doc. 1-3 ¶ 19.) Plaintiff received three follow-up emails regarding Tater Tot's recovery on March 29, 2025, April 1, 2025, and April 3, 2025. (*Id.* ¶ 21.) "Plaintiff has no recollection of giving express, written permission to Defendant to call or text," but on March 31, 2025, Plaintiff began receiving automated text messages from Defendant. (*Id.* ¶¶ 22, 23.) She received six text messages between March 31, 2025, and August 20, 2025. (*Id.* ¶ 22) The text messages included information about Defendant's referral program and hours, as well as reminders for a vaccination and dental care for Tater Tot. (*Id.*) Each text message stated, "Text STOP to opt-out." (*Id.*) The message sent on August 20, 2025, was sent at 11:45 p.m. (*Id.*)

On August 23, 2025, Plaintiff replied via text: "11:45 P.M. Are you serious?

STOP!" (*Id.* ¶ 29.) Defendant responded immediately: "We received your message. Did you mean to unsubscribe? Reply STOP to opt out of all messages." (*Id.* ¶ 30.) Plaintiff does not allege that she replied "STOP."

Plaintiff continued to receive automated messages between September 25, 2025, and January 22, 2026. (*Id.* ¶ 31.) She received twelve messages, containing information about possible care for Tater Tot, available care plans, Defendant's referral program, and hours. (*Id.*)

Plaintiff alleges she sent two demand letters to Defendant, on January 23, 2026, and January 30, 2026. (*Id.* ¶¶ 32, 34.) The first letter "cit[ed] the violations and request[ed] a copy of [Defendant's] internal Do Not Call policy." (*Id.* ¶ 32.) The second letter "advis[ed] of the violations[,] Plaintiff's intent to bring legal action, [and] again requested a copy of [Defendant's] internal Do Not Call policy." (*Id.* ¶ 34.) The Complaint does not further describe or attach the letters. Plaintiff received three more automated text messages, on February 2, 2026, February 8, 2026, and February 11, 2026. (*Id.* ¶ 35.)

On April 23, 2026, Plaintiff filed suit against Defendants, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations. Plaintiff alleges that Defendant "assist[ed] and facilitate[ed]: (a) placing telemarketing calls to consumers without first obtaining prior express written consent; (b) placing telemarketing calls to consumers whose telephone numbers were on the National Do Not Call ('DNC') Registry." (*Id.* ¶ 8.) "Plaintiff is not litigating the messages received prior to the STOP message made on August 23, 2025 at 11:30 am, with the exception of the [message received] on August 20, 2025 at 11:45 pm." (*Id.* ¶ 38.) With respect to the August 20, 2025, text, Plaintiff alleges Defendant "initiated telephone solicitations to Plaintiff outside the permissible hours," pursuant to 47 C.F.R. § 64.1200(c)(1)'s prohibition on solicitations before 8:00 a.m. and after 9:00 p.m. (*Id.* ¶¶ 24, 25.) Plaintiff also claims Defendant violated 16 C.F.R. § 310.4(b)(iii)(3)(i)-(vi) by failing to provide Plaintiff with a copy of Defendant's internal do-not-call policy after Plaintiff's demand letters requested it. (*Id.* ¶¶ 49-53.) Defendant filed the pending Motion to Dismiss. (Doc. 7.)

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A district court may dismiss claims lacking a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Sufficient factual allegations are those that, when taken as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Plausibility is more than mere possibility; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations "are taken as true and construed in the light most favorable to the [plaintiff]." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).

## III.

## A.

Defendant moves to dismiss Plaintiff's claim that Defendant violated the TCPA by sending text messages after Plaintiff's message to Defendant, "11:45 P.M. Are you serious? STOP!" (Doc. 7 at 4-6.) The TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227.

Defendant relies heavily on *Meyer v. Portfolio Recovery Associates, LLC*, where the Ninth Circuit held that "[t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." 707 F.3d 1036 at 1043. Defendant insists that Plaintiff must allege these elements. (Doc. 7 at 4.) But the Ninth Circuit later clarified that the statutory language of the TCPA plainly indicates that "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof," although "a plaintiff seeking a preliminary injunction

- 3 -

must show the absence of prior express consent as pertinent to the likelihood of success on the merits." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 n.3 (9th Cir. 2017). Thus, Plaintiff need not plead the absence of consent to state a plausible claim under the TCPA. *HDMI Licensing Adm'r, Inc. v. Availink Inc.*, 816 F. Supp. 3d 1047, 1056 (N.D. Cal. 2026) ("[A] plaintiff is not required to proactively negate all possible affirmative defenses because the defendant bears the burden of proof on an affirmative defense.").

Plaintiff alleges that she "has no recollection of giving express, written permission to Defendant to call or text." (Doc. 1-3 ¶¶ 23, 38.) While Defendant bears the burden of demonstrating that Plaintiff provided consent, Defendant has not attempted to argue that Plaintiff plead that she consented to receiving the text messages. Defendant instead assumes that Plaintiff "voluntarily provided prior express consent," so Defendant urges the Court to focus only on whether Plaintiff revoked her consent. (Doc. 7 at 4.) The "[t]hree on-point decisions" Defendant cites involve plaintiffs who "undisputedly consented to receiving these text messages." *Epps v. Earth Fare, Inc.*, No. CV 16-08221, 2017 WL 1424637, at *4 (C.D. Cal. Feb. 27, 2017); *see also Rando v. Edible Arrangements Int'l, LLC*, No. 17-701, 2018 WL 1523858, at *1 (D.N.J. Mar. 28, 2018); *Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-0243, 2017 WL 56680000, at *1 (D.N.J. Nov. 27, 2017). The cases cited by Defendant are thus inapposite for determining whether Plaintiff has stated a claim.

In the section of Defendant's brief addressing Plaintiff's "quiet hours" allegations, Defendant does argue that Plaintiff provided "prior express invitation or permission" under 47 U.S.C. § 227(a)(4)'s definition of "telephone solicitation." (Doc. 7 at 6.) Defendant points to Plaintiff's "consensual customer relationship," that "she had taken Tater Tot for treatment," and did not object to emails or texts. (*Id.*) But the Ninth Circuit has held that express consent is "[c]onsent that is clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). Defendant does not point to anything in the Complaint that indicates Plaintiff had in any way "stated" her consent, so the Court cannot conclude that Defendant has demonstrated Plaintiff provided her consent.

Plaintiff has adequately alleged a claim with respect to alleged TCPA violations premised on text messages sent after August 23, 2025.

**B.**

Defendant moves to dismiss Plaintiff's claim that the text message sent at 11:45 p.m. on August 20, 2025, violated the FCC's "quiet hours" rule. (Doc. 7 at 6-7.) 47 C.F.R. § 64.1200(c)(1), which implements  states that "[n]o person or entity shall initiate any telephone solicitation . . . before the hour of 8 a.m. or after 9 p.m." "[T]elephone solicitation" does not include messages sent "to any person with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). As discussed above, Defendant argues that Plaintiff did provide prior permission, but the Court finds that Defendant has not sufficiently demonstrated Plaintiff's prior consent.

Defendant's second argument for dismissal of the "quiet hours" allegation is that Plaintiff cannot sustain a claim based on one text message. (Doc. 7 at 7.) A plaintiff may bring suit under Section 227 only if they have "received *more than one* telephone call within any 12-month period . . . in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added).

Plaintiff does allege that she received more than one message that violates Section 227(c). First, she alleges that she received the August 20, 2025, text message during an impermissible hour, in violation of 47 C.F.R. § 64.1200(c)(1). (Doc. 1-3 ¶¶ 22, 24-25.) She also alleges that all text messages received after August 23, 2025, violated Section 227(c)—presumably pursuant to 47 C.F.R. § 64.1200(c)(2), which provides that Subsection (c) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." (Doc. 1-3 ¶¶ 14, 31, 35.) Both the quiet-hours rule and the do-not-call registry rule are codified at 47 C.F.R. § 64.1200(c) and were thus promulgated pursuant to 47 U.S.C. § 227(c). *See Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 WL 1559717, at *6 (N.D. Cal. Apr. 18, 2016). Alleging that violative messages were sent under both regulations amounts to "receiv[ing] more than one telephone call . . . in

violation of the regulations prescribed under this subsection," so Plaintiff may bring her quiet-hour claim notwithstanding the threshold requirement imposed by 47 U.S.C. § 227(c)(5). Because Plaintiff alleges multiple violations under Section 227(c), Plaintiff is not barred from bringing a claim for the text sent at 11:45 p.m. on August 23, 2025.

The Court will therefore not dismiss Plaintiff's "quiet hours" claim.

### C.

Defendant also moves to dismiss Plaintiff's second cause of action, which alleges Defendant violated 16 C.F.R. § 310.4 of the FTC's Telemarketing Sales Rule ("TSR") by failing to mail its "internal do not call policy" in response to Plaintiff's demand letters. (Doc. 1-3 ¶¶ 49-53.) Defendant is correct in its assertion that the enforcement of the TSR is reserved to the Federal Trade Commission and state attorney generals. 15 U.S.C. §§ 6102(c), 6103. Because no private right of action authorizes Plaintiff to bring her claim pursuant to 16 C.F.R. § 310.4, the Court will grant Defendant's Motion to Dismiss insofar as it requests dismissal of that claim. The Court will dismiss the claim with prejudice, since amendment would be futile.

### IV.

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim that Defendant violated 16 C.F.R. § 310.4 by failing to mail its internal do-not-call policy is dismissed with prejudice. The Court will not dismiss Plaintiff's other claims.

A Rule 16 scheduling conference will be set by separate order.

Dated this 25th day of June, 2026.

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge

- 6 -